UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6270-Cr-GRAHAM

UNITED STATES OF AMERICA

        Plaintiff,

v.

HANNIBAL PENNEY,

        Defendant,

_____/



## RESPONSE TO ATTORNEY JOEL KAPLAN'S MOTION TO WITHDRAW

Defendant HANNIBAL PENNEY thanks this Court for allowing him to respond to defense counsel JOEL KAPLAN'S MOTION TO WITHDRAW as counsel of record in this case and for the opportunity to air this matter. Defendant PENNEY begs the Court's indulgence in the form and manner of this written response, as he is a layperson and, as such, is responding in the same form as the motion before the Court on May 18, 2001. As the MOTION TO WITHDRAW is brought by defendant PENNEY's permanent attorney of record, JOEL KAPLAN, ESQ., and as defendant PENNEY has only received notification of the motion by his counsel today, May 17, 2001, in facsimile form, defendant PENNEY is in the unenviable position of having to defend against the motion himself through this means, that which he respectfully deems most appropriate on such short notice. As defendant PENNEY

is not fully aware of his rights in this matter, defendant PENNEY ask the Court's assistance in determining an appropriate course for his defense counsel. Defendant PENNEY most strenuously denies the unfounded accusations against him written in ATTORNEY KAPLAN'S MOTION TO WITHDRAW and in support of his position provides the accompanying documents from his files and states the following:

1. The attorney/client relationship between defendant PENNEY and permanent attorney of record ATTORNEY JOEL KAPLAN has indeed been fraught with difficulties hindering the undersigned's ability to obtain effective assistance of counsel from attorney KAPLAN. ATTORNEY KAPLAN has, in fact, never requested of defendant PENNEY any funds with which to hire an investigator, and has instead on numerous occasions failed to respond to repeated requests by defendant PENNEY for ATTORNEY KAPLAN to attempt to hire an investigator who will work at the most reasonable rate or to apply to the Court on defendant's behalf to appoint an investigator as defendant PENNEY cannot afford to pay the five to fifteen thousand fee for an investigator that ATTORNEY KAPLAN has estimated. In fact, defendant PENNEY has been so desperate in the matter as to have researched investigators himself, and spoken over the phone with investigator Rory J. McMahon on May 11, 2001, whom defendant PENNEY planned to hire absent the assistance of counsel. Despite the undersigned's

many requests to discuss various matters pertinent to his
case - including the witness list defendant PENNEY
formulated in December of 2000 as well other pressing issues
with ATTORNEY KAPLAN - via telephone, fax, computer modem,
etc., attorney JOEL KAPLAN has remained intransigent in his
demands to only conduct business in person, despite the fact
that his client resides 3,000 miles away, stating that
ATTORNEY KAPLAN is "old school". Not only has defendant
PENNEY been willing to meet with his legal counsel,
defendant PENNEY scheduled an appointment on or around the
beginning of May, 2001 with attorney KAPLAN back in March of
2001. Defendant PENNEY then proceeded to make reservations
to fulfill this commitment, phoned ATTORNEY KAPLAN to
confirm the dates of May 11th through 13th, secured ATTORNEY
KAPLAN'S complete agreement, then purchased the airline
tickets and confirmed rental car and motel arrangements only
to have ATTORNEY KAPLAN phone angrily the next day demanding
additional funds for himself and stating that without them,
ATTORNEY KAPLAN refused to meet with his client, defendant
PENNEY, to go over discovery, defense witness lists, trial
strategy and conference, and ATTORNEY KAPLAN demanded that
defendant PENNEY cancel his trip. ATTORNEY KAPLAN went on to
state that ATTORNEY KAPLAN intended to do no pre-trial work
and no discovery in this case, but only to "show up" as a
warm body in court. At this point, defendant PENNEY sought

free initial consultation legal advice over the phone from attorneys and legal professionals in the Miami area (listed in the accompanying document A), relaying to them the predicament which he now relays to the Court. And to state defendant PENNEY'S position clearly - as it is now and has been since the start of this ordeal - defendant PENNEY has at all times been, and is even more now, with the onset of trial approximately six weeks away, anxious to discuss with his legal counsel of record his limited knowledge of the operations underlying the charges in the case and his right, desire and ability to testify therein. After all, it is defendant PENNEY'S freedom at stake and ATTORNEY KAPLAN'S written assertions to the contrary are false.

2. Moreover, the undersigned asserts that what has been presented to the Court as defendant recalcitrance in ATTORNEY KAPLAN'S MOTION TO WITHDRAW (being heard at 7:30am PT on May 18, 2001) is what defendant PENNEY has been advised by other legal professionals is what is normally termed a pay dispute between defendant PENNEY and his permanent attorney of record JOEL KAPLAN, ESQUIRE, a dispute which has now regrettably resulted in ATTORNEY KAPLAN'S MOTION TO WITHDRAW and in his prior negligent performance and threatened non-performance. The facts of which pay dispute are these: that on or about January 13, 1999, defendant PENNEY phoned ATTORNEY KAPLAN in good faith on

recommendation from WANDA, the now office manager of the
legal firm of BLACK, SREBNICK & KORNSBAN. On that date in
January of 1999, ATTORNEY KAPLAN agreed to defend defendant
PENNEY'S case for the flat fee of ten thousand dollars under
the agreement that the entire ten thousand dollar flat fee
was non-refundable to defendant PENNEY should the case never
be indicted nor brought to Court. The ten thousand dollar
flat fee would, however, cover defendant PENNEY'S entire
case should it be tried since defendant PENNEY had only been
at the company in question for under six months and the
investigation had already taken three years to that point.
Under this agreement, defendant PENNEY immediately forwarded
ATTORNEY KAPLAN ten thousand dollars in a personal check,
which ATTORNEY KAPLAN cashed and which cleared defendant
PENNEY'S bank on February 9, 1999. Subsequently, defendant
PENNEY heard nothing from ATTORNEY KAPLAN - save for a copy
of a letter to prosecutor JEFFREY N. KAPLAN, Esquire,
Assistant United States Attorney, dated January 26, 1999,
stating that ATTORNEY JOEL KAPLAN had been hired to
represent defendant PENNEY in this case - until October 12,
2000 at which time ATTORNEY KAPLAN contacted defendant
PENNEY regarding the indictment in the case and defendant
PENNEY'S voluntary surrender to the Court on November 8,
2000. ATTORNEY KAPLAN'S letter of October 12, 1999 confirms
the fact that ATTORNEY KAPLAN did not contact his client at

all during that period of time. That letter is enclosed.
Defendant PENNEY then flew to Florida as agreed and met
ATTORNEY KAPLAN in ATTORNEY KAPLAN'S office on November 8,
2000, the day defendant PENNEY agreed to appear before the
Court. Defendant PENNEY rode with ATTORNEY KAPLAN to the
courthouse to surrender and face indictment. Prior to that
moment, when defendant PENNEY was physically present in Your
Honor's courtroom with an FBI agent standing over his
shoulder and the attendant stress of indictment at hand,
there had been absolutely no mention of any additional sum
demanded by ATTORNEY KAPLAN above the agreed and already
remitted ten thousand dollar flat fee. Only at this time did
ATTORNEY KAPLAN present defendant PENNEY with a demand for
forty thousand dollars additional funds. Defendant PENNEY
responded to ATTORNEY KAPLAN that defendant PENNEY, as
ATTORNEY KAPLAN knew, was a stock market day trader trading
his own account, and that since the stock market had
recently all but crashed, defendant PENNEY had sustained
catastrophic financial losses and did not have that sum to
pay. ATTORNEY KAPLAN then imparted to defendant PENNEY the
news that defendant PENNEY would presently be jailed if he
did not agree to pay an additional forty thousand dollar sum
to ATTORNEY KAPLAN and thus secure ATTORNEY KAPLAN'S
services as permanent attorney of record. It was under such
duress and in spite of dubious, and in the undersigned's lay

opinion, unethical conduct by ATTORNEY KAPLAN that defendant
PENNEY signed a written agreement and made every effort to
meet ATTORNEY KAPLAN'S new demands. In the coming months,
little could be obtained from ATTORNEY KAPLAN by way of
information or assistance though defendant PENNEY pleaded
for information and asked numerous questions regarding the
disposition of the case and what steps they as a team could
take to mount a successful defense. Defendant PENNEY offered
on more than one occasion to barter his services for a
portion of the fee demanded; to design, build, link and
maintenance a multi-page Internet Web Site for ATTORNEY
KAPLAN, a printed first page of which is included with this
document. ATTORNEY KAPLAN refused. Requests by defendant
PENNEY in reference to the case have met, and still do meet,
with continuous pressure statements by ATTORNEY KAPLAN
demanding an added forty thousand dollar fee for himself and
have ultimately led to the "flash point" referred to by
ATTORNEY KAPLAN in his MOTION TO WITHDRAW, at which stage
defendant PENNEY told ATTORNEY KAPLAN he had saved funds to
fly to Florida to work with ATTORNEY KAPLAN on the case but
did not have an additional forty thousand dollars to pay
ATTORNEY KAPLAN at that time. ATTORNEY KAPLAN'S response in
that call and a subsequent call by defendant PENNEY was to
assert that ATTORNEY KAPLAN would do no pre-trial work and
no discovery, but merely "show up" in court; that ATTORNEY

KAPLAN was going to hang up on his client and not accept any more of defendant PENNEY'S phone calls. After this, defendant PENNEY heard nothing further from ATTORNEY KAPLAN, his permanent attorney of record, until today, March 17, 2001, when defendant PENNEY received a phone call from ATTORNEY KAPLAN and was faxed a copy of the motion before this Court on May 18, 2001 at 13:56 ET by ATTORNEY KAPLAN'S secretary, Ailene. ATTORNEY KAPLAN'S secretary asserts that she sent a copy by mail Monday, May 14, 2001, which defendant PENNEY has to date not received, but notes that ATTORNEY KAPLAN typed into the motion an incorrect address under CERTIFICATE OF SERVICE, despite ATTORNEY KAPLAN'S having contacted defendant PENNEY at the correct address more than once. ATTORNEY KAPLAN today also refused to supply defendant PENNEY with any phone number with which to contact the Court for the hearing at 7:30am PT (defendant PENNEY'S time) on May 18, 2001.

3. As to ATTORNEY KAPLAN'S assertion to the Court as well as to prosecutor ANA MARTINEZ in this case that "based on defendant PENNEY'S conduct, the undersigned [JOEL KAPLAN, ESQUIRE, Attorney for Defendant, 1100 - New World Tower, 100 N. Biscayne Blvd., Miami, FL 33132] believes defendant PENNEY may be manipulating the situation to create an issue to raise under Title 28, United States Code, §225 in the event he is convicted", defendant PENNEY wishes to state

categorically that:

A. Defendant PENNEY has no knowledge of what Title 28, United States Code, §225 is, and that;

B. Defendant PENNEY has not been advised by his permanent attorney of record ATTORNEY JOEL KAPLAN, ESQUIRE or by any other legal professional what it is, and that;

C. As defendant PENNEY has been accused of trying to manipulate it by his own permanent attorney of record in legal Court documents, defendant PENNEY requests explanation of it by the Court during the proceedings on March 18, 2001.

D. Further, defendant PENNEY goes forward in this case with full intent of winning it and ultimately being exonerated, and defendant PENNEY can only be extremely concerned that his permanent attorney of record JOEL KAPLAN, ESQUIRE now thinks in terms of losing the case six weeks prior to trial, though ATTORNEY KAPLAN has from the first told defendant PENNEY that the case is highly winnable.

4. Further, defendant PENNEY asserts that far from "engaging in conduct that shows he is unwilling to work with counsel" as is alleged in the MOTION TO WITHDRAW by ATTORNEY KAPLAN, defendant PENNEY has done and is doing everything he can think of to encourage counsel to begin work on defendant PENNEY'S case, as ATTORNEY KAPLAN has been paid the sum of ten thousand dollars flat fee for his services and has undertaken legal commitment as defendant PENNEY's permanent

attorney of record in this case. Defendant's phone calls to
other attorneys regarding his case in March, 2001 and
February, 2001, and his attempts to hire an investigator on
his own attest to the fact that he is eager to mount his
defense and have his name cleared in this matter. Moreover,
ATTORNEY KAPLAN knows and has known that defendant PENNEY
does not have the funds to hire a new attorney. In fact,
without being asked by defendant PENNEY, ATTORNEY KAPLAN has
advised defendant PENNEY on more than one occasion that it's
too late to get a public defender, so defendant PENNEY has
no alternative but to pay ATTORNEY KAPLAN more money. In
light of these facts, defendant PENNEY respectfully requests
the wise judgement of the Court in resolving this matter.
Should the Court decide that it is up to ATTORNEY KAPLAN to
follow through on his paid flat fee commitment as permanent
attorney of record in this case, defendant PENNEY requests
that the Court please admonish ATTORNEY KAPLAN to provide
defendant PENNEY his best effective counsel for due process
in this case.

Respectfully submitted,

HANNIBAL PENNEY
1317 N. San Fernando Bl.
Burbank, CA 91504
Phone: (818)512-8681

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been mailed to Ana Martinez, Esquire, Assistant United States Attorney, 99 N.E. 4th Street, Miami, FL 33132 and faxed and mailed to Joel Kaplan, Esquire, 1100-New World Tower, 100 N. Biscayne Blvd., Miami, FL 33132, Fax#: (305)373-3832, this 18th day of May, 2001.

# Document A

## JUDGE GRAHAM TELEPHONE HEARING - 7:30 am PT
## MAY 18, 2001 re:
## ATTY JOEL KAPLAN MOTION TO WITHDRAW FROM CASE

Legal professionals which DEFENDANT PENNEY has contacted regarding this matter:

1. **Attorney Brian L. Tannebaum. P.A. / Criminal Trial Lawyer**
   200 South Biscayne Blvd., Ste. 2690, Miami, FL 33131
   (305)775-8833
   **Spoke with him on:**
   **Friday, 2/9/01, 5:00pm ET**
   **Monday, 5/7/01, 6:00pm ET**
   **Thursday, 5/17/01, 9:15pm ET**

2. **Attorney Guillermo Pena / Board Certified Criminal Trial Lawyer**
   2225 Coral Way, Miami, FL 33145
   (305)860-9595
   **Spoke with him on:**
   **Friday, 2/9/01, 6:00pm ET**
   **Monday, 5/7/01, 5:00pm ET**

3. **Attorney Ed Shohat, P.A. / Bierman, Shohat, Loewy & Klein**
   Penthouse 2, 800 Brickell Ave, Miami, FL 33131-2944
   (305)358-7000
   - (3) Attorneys listed in "Best Lawyers in America"
   - Concentrating in Criminal Law matters
   - "You need an attorney you can trust and have confidence in"
   - "What you're saying sounds like a classic bait and switch"
   - **Spoke with him on:**
     **Friday, 5/11/01, 5:00pm ET**

4. **Neal Sonnett, P.A.**
   Two South Biscayne Blvd., Ste. 2600, Maimi, FL
   (305)358-2000
   - **Spoke with him on: Friday, 2/9/01, 4:45pm ET**

5. **Original Referral - Wanda, Office Manager**
   **Black, Srebnick & Kornsban**
   201 South Biscayne Blvd., Ste 1300
   Miami, FL 33131
   (305)371-6421
   **Spoke with her on:**
   **1/4/99, 11:00am ET**
   **5/16/01, 11:15am ET**


6. **Private Investigator - Rory J. McMahon**
   1451 W. Cypress Creek Road
   Suite 300
   Ft. Lauderdale, FL 33309
   (954)956-9066 or 800-211-5092
   **Spoke with him on:**
   **5/11/01, 2:30pm ET**
   **5/11/01, 5:30pm ET**

# ...oel Kaplan, Esq.



Home Page

Firm Overview

Attorney Profile

Contact Us

Directions

FAQ's & News

Joel,
Your
Photo
Here!

**Home Page**

**Joel,**

**Here's the place to welcome visitors to your Web site and give them a brief summary of what it's all about. Use this welcome mat to shout about the latest news from your law firm and to invite them to explore the rest of the site. You can use this area to promote further information about yourself and other members of your law firm.**

Suite 100, New World Tower
100 North Biscyane Blvd.
Miami, FL 33132

Tel: (305)374-2111,

legalcare@setyoufree.com
www.legalcare.com
WebMaster: Your Name

## We Care About Your Defense

<u>IN EXCHANGE FOR CERTAIN FEES OWED
JOEL WOULD RECEIVE:</u>

1. HIS OWN **MULTI-PAGE WEB PAGE**
2. ALL THE **GRAPHIC DESIGN FOR THE WEB PAGE**
3. ALL THE **TYPESETTING FOR THE WEB PAGE**
4. THE **WEB PAGE POSTING TO THE INTERNET**
5. THE **WEB PAGE LINKED** TO MARTINDALE-HUBBELL AND THE MAJOR
   SEARCH ENGINES *****
6. THE POINT BEING **TO ESTABLISH HIS OWN UNIQUE INTERNET
   IDENTITY** AND DISTINGUISH HIM FROM HIS COMPETITORS WITH A
   DISTINCT SLOGAN AND AN EXCITING AND COLORFUL GRAPHIC
   PRESENTATION THAT INCLUDES A TOUCH OF HIS PERSONAL HUMOR
   TO GENERATE CLIENTS AROUND THE U.S. AND THE WORLD.


*IN ADDITION, HE'D RECEIVE:*

1. A NEW PERSONALLY-DESIGNED **LOGO** TO USE AS HE SEES FIT
2. GRAPHIC DESIGN AND TYPESETTING FOR **BUSINESS STATIONERY**
3. GRAPHIC DESIGN AND TYPESETTING FOR **BUSINESS ENVELOPES**
4. GRAPHIC DESIGN AND TYPESETTING FOR **BUSINESS CARDS**
5. GRAPHIC DESIGN AND TYPESETTING FOR A **PUBLICITY KIT** THAT
   WOULD INCLUDE:
   A. CAMERA-READY **FOLDER** DESIGN AND TYPESETTING
   B. CAMERA-READY **BROCHURE** DESIGN AND TYPESETTING
   C. **CLIENT INSTRUCTION SHEET**
   D. CAMERA-READY FREQUENTLY ASKED QUESTION **[FAQ] SHEET**
   E. **HE MAY ALSO CHOOSE WHATEVER DOCUMENTS HE'D LIKE**
      TYPESET FOR THE KIT IN ADDITION TO THE ABOVE, AND
      LATER ADD HIS OWN STANDARD RETAINER AGREEMENT, ETC.)

# JOEL KAPLAN
### ATTORNEY AT LAW
### SUITE 1100
### NEW WORLD TOWER
### 100 N. BISCAYNE BOULEVARD
### MIAMI, FLORIDA 33132

### (305) 374-2111

October 12, 2000

Hannibal Penney
9404 Wayside Drive
Sunland, California 91504



Dear Mr. Penney,

    Please call me immediately upon your receipt of this letter. We need to discuss the matter we last spoke about in January of 1999. I await your call.

                    Sincerely,

                    Joel Kaplan, Esq.

JK/ar