UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6270-CR-GRAHAM



UNITED STATES OF AMERICA,

        Plaintiff,

v.

HANNIBAL PENNEY,

        Defendant.
_____/

### DEFENDANT HANNIBAL PENNEY'S SECOND MOTION IN LIMINE: TO SUPPRESS ILLEGAL WIRE INTERCEPTIONS AND THIER FRUITS.

Defendant Hannibal Penney is an "aggrieved person" as defined in 18 USC §2510(11) of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, in that all or substantially all of his wire communications during the period of approximately January 1 to July 17, 1996, were unlawfully intercepted by or on behalf of Ed Hexter without Mr. Penney's knowledge or consent. The government has declared its intent to disclose many of these unlawfully intercepted wire communications during trial, in violation of 18 USC §2511. By this motion, Mr. Penney seeks to prohibit the United States from such unlawful disclosure and to suppress the fruits of the illegal interceptions that have been obtained by the government. This suppression is required by 18 USC §2515:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial * * * if the disclosure of that information would be in violation of this chapter.



1

Mr. Penney, as an "aggrieved person," has standing to move to suppress both the contents of the intercepted communication and evidence derived therefrom. 18 USC §2518(10)(a)(i). This motion is timely under that provision.

**1. The illegal wiretap:**

Ed Hexter was the founder, owner and manager of Best Marketing, Inc., and employed Mr. Penney as a telephone salesman from approximately January 1 to July 17, 1996. Ed Hexter operated a recording system by which Hexter indiscriminately intercepted Mr. Penney's telephone conversations. This recording was done without Mr. Penney's knowledge or consent. The customers to whom Mr. Penney spoke did not know of or consent to Hexter's interception of their communications.

Because of the long delay before indictment and because Hexter is deceased[1], there is no way Mr. Penney can find out anything about this recording practice other than the fact that it occurred.

Mr. Penney's only knowledge of why Hexter did what he did is inferential. Hexter's records show that his lawyers frequently used tape recordings of telephone conversations between BMI employees and BMI customers to deflect or defeat inquiries from or complaints by many different law enforcement agencies. Complaining or inquiring law enforcement agencies included the Federal Bureau of Investigation, the Broward County Sheriff's Office, state agencies from ten or twelve different states. Since Hexter's lawyers were successful in the past in defending Hexter from legal attack, both criminal and civil, by using tape recordings of his employees' conversations, Mr.

---

[1] Ed Hexter's death, at about the time of the return of this indictment, deprives Mr. Penney of whatever injunctive or civil money damage relief he might have been able to obtain. Suppression of evidence is Mr. Penney's only recourse to protect his privacy rights.

2

Penney infers that Hexter continued the practice for the same reason, to turn over to law enforcement to escape responsibility in the event of criminal action.

Hannibal Penney can, and does, assert categorically that whatever purpose Ed Hexter had in recording these conversations, he, Penney, did not know of it and did not consent to this invasion of his privacy.

**2. The legal issues:**

Normally, suppression of evidence is a judicially fashioned remedy for violations of the Fourth Amendment. Suppression of illegally intercepted wire communications, however, is a legislative mandate; "Title III contains a strict exclusionary rule." *United States v. Cianfrani*, 573 F.2d 835, 855 (3rd Cir.1978). "The federal wiretapping statute goes further to protect privacy than the Fourth Amendment." *Chandler v. United States Army*, 125 F.3d 1296, 1298 (9th Cir.1997). "Except as expressly authorized ... all interceptions of wire and oral communications are flatly prohibited. Unauthorized interceptions and the disclosure or use of information obtained through unauthorized interceptions are crimes.... Title III also bars the use as evidence before official bodies of the contents and fruits of illegal interceptions...." *Gelbard v. United States*, 408 U.S. 41, 46, 92 S.Ct. 2357. 2360, 33 L.Ed.2d 179 (1972). The purpose of the legislation is clear: "The protection of privacy was an overriding congressional concern." Id. at 48, 92 S.Ct. at 2361.

There have been surprisingly few cases that have addressed the issue here, whether the government may use of the fruits of a private violation of Title III in a criminal prosecution. The plain language of Title III calls for suppression of illegal interceptions such as those made by Ed Hexter of Mr. Penney's wire communications.

The rule of suppression of such evidence, declared by the First Circuit in *United States v. Vest*, 813 F.2d 477 (1st Cir.1987), suffered a split when the Sixth Circuit in *United States v. Murdock*, 63 F.3d 1391 (6th Cir.1995), allowed an exception for clean hands by the government[2]. However, *Murdock*'s vitality in the Sixth Circuit is now in question. Other Circuits have refused to follow its reading of the statute. The District of Colombia Circuit in *Barry v. Funk*, 146 F.3d 1003 (D.C.Cir.1998), the Ninth Circuit in *Chandler v. United States Army*, 125 F.3d 1296, 1298 (9th Cir.1997), and the Third Circuit in *In re Grand Jury*, 111 F.3d 1066 (3rd Cir.1997), have rejected *Murdock*.

In *United States v. Vest*, 813 F.2d 477, 479 (1st Cir.1987), the First Circuit affirmed the suppression of a tape recording the government wished to use in a perjury prosecution that had been made, without governmental involvement, by a private citizen in violation of Title III. The government argued on appeal that the exclusionary rule of section 2515 did not apply "where the government is merely the innocent recipient, rather than the procurer, of an illegally-intercepted communication." Id. at 480. "The government argues that we should read into section 2515 the exception to the fourth amendment exclusionary rule for evidence falling into the government's hands after a private search and seizure, see, e.g. *United States v. Jacobsen*, 466 U.S. 109, 113-18, 104 S.Ct. 1652, 1656-59, 80 L.Ed.2d 85 (1984). But the fourth amendment exclusionary rule is a judicially-fashioned rule serving different purposes than the congressionally-created rule of section 2515 – a rule that we are here limited to interpreting rather than modifying. We agree with the district court that to hold that section 2515 allows the

---

[2] In light of Hexter's pattern of using tape recorded conversations to deflect criminal investigations in the past, Mr. Penney does not concede that the government should be viewed as having clean hands. As will be shown below, however, even if the government had clean hands, they could not use Hexter's tapes against Mr. Penney.

government's use of unlawfully intercepted communications where the government was not the procurer 'would eviscerate the statutory protection of privacy from intrusion by illegal private interception.' 639 F.Supp. at 914-15. The protection of privacy from invasion by illegal private interception as well as unauthorized governmental interception plainly 'play[s] a central role in the statutory scheme,' see *United States v. Giordano*, 416 U.S. 505, 528 (1974)."

The First Circuit in *Vest* declined "to read into section 2515 an exception permitting the introduction in evidence of an illegally-intercepted communication by an innocent recipient thereof." Id. at 481.

The Sixth Circuit took the opposite tack in *United States v. Murdock*, 63 F.3d 1391 (6th Cir.1995). *Murdock* read the statute, the congressional purpose and relevant authority in a way far different than *Vest*, concluding: "There is nothing in the legislative history which requires that the government be precluded from using evidence that literally falls into its hands." Id. at 1403. *Murdock's* analysis can be criticized and, in fact, was sharply criticized[3] by Chief Judge Merritt of the Sixth Circuit in a dissenting opinion to *Doe v. Security and Exchange Commission*, 86 F.3d 589, vacated and withdrawn, 86 F.3d 599 (6th Cir.1996). This opinion was withdrawn for rehearing *en banc*. Remarkably, the *en banc* opinion in *Smith v. Security and Exchange Commission*, 129 F.3d 356 (6th Cir.1997), side stepped the illegal wire tap issue as "moot" and *Murdock* was not even cited. It is not clear that *Murdock* has any remaining precedential value in the Sixth Circuit. It certainly has no influence outside that circuit.

---

[3] Perhaps more politically correct, the Sixth Circuit has characterized Judge Merritt's words as "vigorous dissent" in *Nix v. O'Malley,* 160 F.3d 343, 351 (6th Cir.1998).

5

The First Circuit recognized that the "clean hands" exception is contrary to the clear language of Title III, and announced that it was unwilling to ignore that clear language. "Even if we were prepared to ignore the literal language of the statue, however, we find no other indication that Congress intended the clean hands exception the government would have us read into §§ 2515 and 2511(1)(c). The statutory structure makes it clear that any interceptions of communications and invasions of individual privacy are prohibited unless expressly authorized in Title III[4]." *In re Grand Jury*, 111 F.3d at 1078.

The District of Columbia Circuit in *Berry v. Fund*, 146 F.3d 1003, 1012 (D.C.Cir.1998), observed that Congress' suppression language in §2517(1) & (2) "does not appear hospitable to the government's contention" that there was a clean hands exception and went on to expressly reject *Murdock*. The *Murdock* court "seems to have relied only on policy notions rather than the language of the statute in accepting the government's 'clean hands' argument." *Id.* at 1013. The *Berry* court adopted *Chandler v. United States Army*, 125 F.3d 1296 (9th Cir.1997). "The Ninth Circuit, as do we, rejected *Murdock* because its interpretation did not square with the statute's language." *Id.*

*Murdock* is a derelict on the waters of the law.

---

[4] "The government cites a statement in the legislative history, to the effect that '[t]he perpetrator must be denied the fruits of his unlawful actions in civil and criminal proceedings,' 1968 U.S.C.C.A.N. at 2156, to support its contention that Congress did not intend to deprive the government of the use of unlawful evidence when the government is not the 'perpetrator' of the illegal interception. But this statement evidences no intent that a non-perpetrator may use the fruits of another's unlawful actions. To the contrary, the statute and its legislative history provide that anyone who discloses the contents of a communication knowing it to be the fruit of an illegal invasion of privacy is guilty of a criminal offense, see 18 U.S.C. § 2511(1)(c); 1968 U.S.C.C.A.N. at 2181-82, and likewise § 2515's evidentiary prohibition must be applied to perpetrators and non-perpetrators alike." Id. at 1078.

This Court should be guided by the Third Circuit on this issue: "We agree with the interveners that, when enacting Title III, Congress performed all of the balancing necessary of the public interest in law enforcement against the privacy interests of citizens." Id. at 1078-79. Chief Judge Sloviter dissented from the majority in *In re Grand Jury*, but did "not disagree with the proposition that a person aggrieved under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified as amended at 18 U.S.C. §§ 2510-2522 ("Title III"), should have the right to preclude the use of illegally intercepted communications at a criminal proceeding whether or not the government was responsible for the interception."

Hannibal Penney is a person aggrieved under Title III. He should have the right to preclude the use of illegally intercepted communications in this proceeding. The intercepts and their fruits must be suppressed.

Respectfully submitted,

William M. Norris
7685 S.W. 104th Street, Suite 220
Miami, FL 33156
Tel: 305-661-6118
Fax: 305-667-6161
Florida Bar No. 0309990
Attorney for Hannibal Penney

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing motion in liminie was mailed, postage prepaid, this 31st day of December, 2001, to: AUSA Ana Maria Martinez, 44 N.W. 4th Street, Miami, FL 33132 and Albert Levin, Esquire, Brickell Avenue, Miami, Fl 33133.

                                               */s/ William M. Norris*
                                                William M. Norris