UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6270-CR-GRAHAM



UNITED STATES OF AMERICA,

        Plaintiff,

v.

HANNIBAL PENNEY,

        Defendant.
_____/

### DEFENDANT HANNIBAL PENNEY'S REPLY TO SAMUEL S. FIELDS' RESPONSE: ISSUE OF ATTORNEY-CLIENT PRIVILEGE

"Defendant Hannibal Penney's *Ex Parte* Motion For Ruling On Preliminary Question Of Attorney-Client Privilege" seeks a preliminary ruling on the question of the survival of Edward Hexter's attorney-client privilege. Mr. Penney believes that Ed Hexter may never have intended his communications with his lawyer to be confidential because he shared them with his employees. Any confidentially that remained certainly evaporated with Edward Hexter's entry in to a plea and cooperation agreement with the government in August of 1999, in which Hexter obtained benefits from and made commitments to the government. Once Hexter waived his attorney-client privilege at an earlier stage in this case, that waiver stands for later proceedings in the same case. *United States v. Miller*, 660 F.2d 563, 568 (5th Cir. 1981).

The response filed on behalf of Attorney Samuel S. Fields to Defendant Hannibal Penney's *Ex Parte* Motion chooses to address matters outside of Mr. Penney's pleading.



Respondent chides Mr. Penney for not posing specific questions[1], but Mr. Penney does not need, and does not seek, an order from this court permitting him to do what he is allowed to do anyway, that is subpoena Mr. Fields to answer relevant questions about non-privileged matters.

Mr. Penney's motion seeks preliminary ruling on whether an attorney-client privilege survives at all as to the matters about which Ed Hexter told his employees and as to matters about which Ed Hexter promised to make full disclosure pursuant to his plea agreement with the government. The burden of showing privilege and establishing non-waiver falls on Mr. Fields as the person asserting the privilege. He has not carried his burden.

*United States v. Zolin*, 809 F.2d 1411, 1415 (9th Cir.1987), summarizes the law that should guide the court in this matter:

> The attorney-client privilege is to be strictly construed. *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). *See* 8 J. Wigmore, *Evidence* § 2291 at 554 (McNaughton rev. 1961). The logic behind the strict construction of the attorney-client privilege applies with equal force to the marital communications privilege: like the attorney-client privilege, the marital communications privilege is "an obstacle to the investigation of the truth…[that] ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *Id.* The burden of demonstrating the existence of an evidentiary privilege rests on the party asserting the privilege. *See United States v. Gann*, 732 F.2d 714, 723 (9th Cir. 1984) (attorney-client privilege); *Weil*, 674 F.2d at 25 (evidentiary privileges generally). In order to establish the applicability of the attorney-client privilege to a given communication, the party asserting the privilege must affirmatively

---

[1] Before he filed his motion, counsel for Mr. Penney asked Mr. Fields about the possibility of asking questions about what Mr. Fields did, as shown by his billing records. Contrary to his position in his pleading, Mr. Fields did assert a blanket privilege, refusing to discuss this and stating that even counsel's possession of the billing records was some how a violation of the attorney-client privilege. Mr. Fields' apparent concession on this point even at this late hour is appreciated, but it is not responsive to Mr. Penney's motion. Mr. Fields is like the old army general, intent on refighting the last war.

demonstrate non-waiver. *See id.; United States v. Landof,* 591 F.2d 36, 38 (9th Cir. 1978).

The voluntary delivery of a privileged communication by a holder of the privilege to someone not a party to the privilege waives the privilege. *See Clady v. County of Los Angeles,* 770 F.2d 1421, 1433 (9th Cir. 1985) (the voluntary disclosure of a privileged attorney-client communication constitutes waiver); *United States v. McCown,* 711 F.2d 1441, 1452-53 (9th Cir. 1983) (the marital communications privilege is inapplicable to communications not intended to remain confidential); *Weil,* 647 F.2d at 24 (the voluntary disclosure of a privileged attorney-client communication constitutes waiver). Moreover, when the disclosure of a privileged communication reaches a certain point, the privilege may become extinguished even in the absence of a wholly voluntary delivery. *See In re Sealed Case,* 676 F.2d 793, 818 (D.C. Cir. 1982) ("Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the privilege.")

*United States v. Suarez,* 820 F.2d 1158, 1160 (11th Cir. 1987), is to the same effect:

We begin by noting that the privilege is not a favored evidentiary concept in the law since it serves to obscure the truth, and it should be construed as narrowly as is consistent with its purpose. The purpose of the attorney-client privilege is to promote freedom of consultation between client and lawyer by eliminating the fear of subsequent compelled legal disclosure of confidential communications. However, at the point where attorney-client communications are no longer confidential, i.e., where there has been a disclosure of a privileged communication, there is no justification for retaining the privilege. For that reason, it has long been held that once waived, the attorney-client privilege cannot be reasserted. (citations omitted).

The issue before the court is whether Edward Hexter waived his attorney-client privilege by assuring prospective employees such as Mr. Penney that his lawyer was insuring that the telemarketing operation was legal and by entering into plea and cooperation agreement with the government premised on the undertaking that he, Edward Hexter, would make a complete and truthful disclosure regarding his participation in the telemarketing conspiracy. Implicit in Mr. Hexter's plea and cooperation agreement with the government is a waiver of his attorney-client privilege as to matters within the scope

of his plea, and once waived in this proceeding, the privilege remains waived. *See, United States v. Miller*, 660 F.2d 563, 568 (5th Cir. 1981).

Two examples, mentioned in Mr. Penney's motion, should illuminate why it is that Ed Hexter's agreement with the government waives any attorney-client privilege he might have had with respect to the information Mr. Penney seeks. The first deals with review of Ed Hexter's scripts and the second deals with the practice of "red lining" certain states.

**A. April 1992 "analysis of scripts vis a vie other statutes" and related activity:**

Edward Hexter's telemarketing activity at Best Marketing was built around "scripts" or "pitches" that were provided to everyone on his sales force and which every sales person was required to follow. Even the forms that the sales people filled out reporting on each of their sales included a space for the salesman to specify which particular "pitch" they had used to secure that particular sale. The reported judicial opinions in cases involving telemarketing fraud suggest that the use of scripts is typical in the telemarketing industry.

What is atypical about this case is the fact that Ed Hexter bragged that his lawyer had approved the scripts used by Best Marketing and what is extraordinary about this case is the fact that there is evidence to show that Ed Hexter's boast was true.

The billing record shows the following: Margaret-Ray Kemper billed Ed Hexter on April 3, April 7 and April 8, 1992, for "outlining letter regarding scripts," "analysis of scripts vis a vie other statutes," and "letter outlining analysis of scripts vis a vie other statutes." Samuel S. Fields billed Ed Hexter on June 30, 1992 for "Call from North Carolina about new allegation of 'prize' pitch. Advise Billie Holcomb it would stop. Call

Mike Ferondelli." On August 10, 1993, Samuel S. Fields billed Ed Hexter for "Review new pitch with Steve Gerson and Ed Hexter."

These scripts or pitches are the very heart of the telemarketing activity. These scripts or pitches are also the very heart of the telemarketing fraud conspiracy to which Mr. Hexter agreed to plead guilty and to which he agreed to fully and truthfully debrief. Mr. Penney understood from Ed Hexter's representations that Hexter's lawyer had approved the scripts being given to Penney to use in his sales activity at Best Marketing. Hexter's representations may or may not have been true, but his representations certainly constitute a waiver of the privilege. By his agreement to tell all and to tell all truthfully to the government, Ed Hexter waived what ever attorney-client privilege he might have had regarding these scripts. Had the government, or had the court, or had the probation office, during the exercise of their respective responsibilities during the plea and sentencing process, chosen to ask Ed Hexter about these scripts, how they had come to be used by Best Marketing or what role Hexter's lawyer played in reviewing the scripts, Ed Hexter would not have been permitted by his agreement to assert an attorney-client privilege. He had waived the privilege. Since Ed Hexter waived the privilege, Samuel S. Fields cannot now revive it.

**B. Best Marketing's "red files:"**

By volume, about half of the client files seized by the FBI on July 17, 1996 from Best Marketing are "red files," relating to states in which Hexter's sales staff was told not to solicit business. As noted in Mr. Penney's motion, Samuel S. Fields and his firm fielded complaints and researched statutes in the states of Louisiana, North Carolina, Wisconsin, Georgia, Indiana, Virginia, Illinois, Texas and Colorado. Some of these

states are "red lined" and some are not. The government has made much of this practice of "redlining" as proof of fraudulent intent. How and why Hexter came to designate some of the states researched by Fields as states to avoid is certainly a matter within the scope of his agreement to make full and truthful disclosure. Certainly, Ed Hexter waived his attorney-client privilege with respect to this matter.

**Conclusion**

Mr. Penney restates the conclusion advanced in his motion: Edward Hexter's disclosure of this lawyer's advice to his employees and his promise to make full disclosure to the government constitute a waiver of the attorney-client privilege as to matters within the scope of the conspiracy charged.

Respectfully submitted,

*[signature]*
William M. Norris
7685 S.W. 104th Street, Suite 220
Miami, FL 33156
Florida Bar No. 0309990
Attorney for Hannibal Penney

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing reply was mailed, postage prepaid, this 20th day of February, 2002, to: Kevin J. O'Grady, 200 East Broward Boulevard, POB 1900, Ft. Lauderdale, FL 33302; and Albert Z. Levin, 888 Biscayne Boulevard, 6th Floor, Miami, FL 33131.

*[signature]*
William M. Norris