UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-6270-CR-DLG
DATE: 3-28-02

United States of America,

vs.

Hannibal Penny
Roby Dudley

JUDGE: DONALD L. GRAHAM

FILED IN OPEN COURT
3-28-02 AT
Miami FLA.

CRIMINAL COURT MINUTES

TYPE OF HEARING: Continuation of Motion Hearing

AUSA: Annie Marti
DEFENSE COUNSEL: Albert Levin - William Norris

INTERPRETER: None   COURT REPORTER: Pat Sanders
CLERK: C. Foster

PROCEEDINGS AT HEARING: Counsel for Defense presented Argument to the court - Response by the Government short rebuttal -

Court changed calendar call to 4:00 p.m.

MOTION: ____GRANTED   ____DENIED   X TAKEN UNDER ADV.
SETTING

STATUS: _____   NEW TRIAL DATE: 4-3-02 @ 4:00 p.m.
CHANGE OF PLEA: _____   OTHER: Atty/Client issue

136/WC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 00-6270-CR-GRAHAM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HANNIBAL PENNEY,

    Defendant.
_____/

FILED by _____ D.C.
MAR 28 2002
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## POST-HEARING MEMORANDUM REGARDING TITLE III ISSUES.

By this memorandum, defendant Hannibal Penney brings to the court's attention two points central to resolving the government's claim of "business extension exception" to Title III.

**1. The government's position before this court is at odds with the position taken in the United States Attorney's Manual.**

Section 9-60.215 of the United States Attorney's Manual states in pertinent part:

> The courts of appeals do not agree on the scope of the exception as it pertains to telephone extensions. The Criminal Division believes that the better view is found in *United States v. Harpel*, 493 F.2d 346, 351 (10th Cir.1974), where the court held that "a telephone extension used without authorization or consent to surreptitiously record a private telephone conversation is not used in the ordinary course of business. This conclusion comports with the basic purpose of the statute, the protection of privacy . . . ." But cf. *Briggs v. American Air Filter, Inc.*, 630 F.2d 414 (5th Cir.1980); *Anonymous v. Anonymous*, 558 F.2d 677 (2d Cir.1977). In addition, the Criminal Division takes the position that supervisory observing equipment used by some employers to monitor employee telephone communications falls within the "ordinary use" exception only if it is used solely for the legitimate business purpose of determining the

1



need for training or improving the quality of service rendered by employees in the handling of telephone calls, and only after all employees are informed that their business telephone contacts are subject to observation. See *James v. Newspaper Agency Corp.*, 591 F.2d 579 (10th Cir.1979).

In this case, to obtain a conviction of Hannibal Penney, the prosecutor has thrown this limitation to the wind and seeks to obtain a conviction using evidence obtained in violation of this stated rule of self restraint. Ed Hexter obtained the tapes in question surreptitiously and, while his true purpose in installing his taping system was lost with his death, there is no suggestion in the record that his conduct was "solely for the legitimate business purpose of determining the need for training or improving the quality of service rendered by employees in the handling of telephone calls. Certainly, none of the employees "are informed that their business telephone contacts are subject to observation."

**2. The Eleventh Circuit case of *Epps v. St. Mary's Hospital* does not fully consider the two pronged statutory test on which the business extension exception is based, and cannot dispose of the issues before this court.**

In *Epps v. St. Mary's Hospital*, 802 F.2d 412 (11th Cir.1986), the Eleventh Circuit approved the taping of a conversation that was routed through a console installed by Bell South that was designed to record, did in fact record, and was known by all employees to record telephone calls to emergency medical technicians. The case is of precedential value, but it gives only telegraphic consideration to the issues that are pivotal in this litigation. That case should not be considered as resolving the questions raised by Mr. Penney's motion and shown by the evidence at the hearing to have merit.

The exception that the government seeks to apply to Ed Hexter's tapes is based on 18 U.S.C. § 2510(5)(a); this is a two prong test which, to be applied properly to the facts of this case, require a discerning evaluation of, first, the telephone equipment used to produce the tapes in issue, and, second, what the legitimate business purpose, if there be any legitimate purpose, was behind making the recordings.

**a. The Equipment:**

In this case, there is no telephone equipment used to accomplish the intercept.. There simply is no recorder attached to a telephone extension, because there is no telephone extension.

Ed Hexter's taping regimen, and the equipment he installed on or about February 8, 1996, is utterly unlike the "business telephone extension" that gives this exception its name. It is utterly unlike the equipment used by Saint Mary's Hospital because the TEAC recorder is not telephone equipment. Ed Hexter's taping regimen demands analysis from this court that simply is not provided by the opinion in *Epps v. St. Mary's Hospital*.

During argument following the hearing on Tuesday, March 26, 2002, counsel for Mr. Penney referred the court to *Williams v. Poulos,* 11 F.3d 271 (1st Cir.1993). *Poulos,* together with *Sanders v. Robert Bosch Corp.,* 38 F.3d 736 (4th Cir.1994), show the level of technical sophistication that has crept into the first prong of the business extension exception.

*Poulos* is a good place to begin, 11 F.3d at 280:

> [W]e note that the CAR system is factually remote from the telephonic or telegraphic equipment courts have recognized as falling within the

exception at 18 U.S.C. § 2510(5)(a). See e.g. *Epps v. St Mary's Hosp.*, 802 F.2d 412, 415-16 (11th Cir.1986) (dispatch console installed by telephone company considered telephone equipment); *Watkins v. L.M. Barry & Co.*, 704 F.2d 577, 582-84 (11th Cir.1982) (standard extension telephone implicitly considered telephone equipment); *Briggs v. American Air Filter Co., Inc.* 630 F.2d 414, 416-20 (5th Cir.1980) (same); *James v. Newspaper Agency Corp.*, 591 F.2d 579, 581 (10th Cir.1979) (monitoring device installed by telephone company implicitly considered telephone equipment). Indeed, we thing it self evident that the CAR system, far from being the tiype of exempt equipment contemplated by the authors of the business extension exception, is precisely the type of intercepting devise Congress intended to regulate heavily when it enacted Title III.

*Poulos* concluded on this point, Id. at 281:

Here, given the trial court's findings regarding the nature of the monitoring device, the only sustainable ruling would be that the device was not a "telephone or telegraphic instrument, equipment or facility, or a component there of," and therefore not within the parameters of the business extension exception.

*Saunders v. Robert Bosch Corp*, 38 F.3d at 741, made an observation that is directly on point: "[w]e believe that evidence as to whether such equipment is sold by the telephone company in ordinary course of its business is nevertheless relevant as t least some indication of whether the equipment in question is 'telephone or telegraph instrument, equipment or facility, or any component thereof.... ' The government's own witness, the man who installed the TEAC recorder, testified that the telephone service provider did not provide such equipment.

Ed Hexter's system is not, by any stretch of the imagination, a business telephone extension and the Title III exception should not apply.

**b. The Business Purpose:**

*Adams v. City of Battle Creek,* 250 F.3d 980 (6th Cir.2001), observed: "There is some disagreement in the case law about whether 'covert' monitoring can ever be in

4

the 'ordinary course of business.'" That court concluded that the business telephone exception cannot apply if the intercepted person is not given notice. That court concluded that "ordinary course of business" requires 1) a legitimate business purpose, 2) routine activity, and 3) notice.

The *Adams* formulation must apply in this particular case because the government has not presented a hint of what business purpose might have been served by the taping regimen installed on or about February 8, 1996. There is not a shadow of a doubt that this taping program was surreptitious. Prior to Mr. Penney's employment at Best, there may have been some monitoring program to monitor the performance of some employees, but the government has not suggested that any of the intercepts they seek to introduce into evidence were made for this purpose and there is utterly no evidence to support such a contention. Indeed, they cannot make such an argument because there is no way it would be physically possible for Ed Hexter to review the recordings of twenty telephone lines in his office that his new system recorded. Indeed, the system Ed Hexter put in place on or about February 8, 1996 would produce about 180 hours of tape recording in every 9 to 6 working day. Since it is physically impossible for Ed Hexter to keep up with the flood of intercepted conversation his system produced, traditional employee performance monitoring could not have been Ed Hexter's purpose.

*Saunders v. Robert Bosch Corp,* 38 F.3d at 741, said it succinctly: "Covert use of a surveillance devise must be justified by a valid business purpose."

What was Ed Hexter's valid business purpose? The record is silent. The

5

government simply has not shown that there is any "ordinary course of business" or "legitimate business purpose" to the intercepts made after February 8, 1996. The record is silent because Ed Hexter is dead. The government cannot prove Ed Hexter's purpose because he took it to the grave.

Wherefore, Mr. Penney requests that the Court deny the government's claim of exception and suppress the tapes and their fruits.

Respectfully submitted,

*/s/ William M. Norris*

William M. Norris